# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 9, 2022

Lyle W. Cayce
Clerk

No. 21-20207

MDK Sociedad De Responsabilidad Limitada,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Proplant Incorporated (Texas); Proplant Incorporated
(Nevada),

*Defendants—Appellees/Cross-Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-485

Before Jones, Higginson, and Duncan, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

MDK Sociedad de Responsabilidad Limitada ("MDK"), a Bolivian entity, and Proplant, Inc., a Texas-based corporation, jointly pursued a lucrative operations and maintenance contract with Bolivia's state-owned energy company. After the deal fell through, MDK sued Proplant under both breach of contract and tort theories. Before discovery was complete, the

No. 21-20207

district court granted Proplant's motion for summary judgment. We AFFIRM.[1]

## I.

MDK's complaint alleges that Proplant provided MDK with a proposed contract for subcontractor services in October 2016 ("the October Document"). MDK alleges that as of November 11, 2016, it had not executed the October Document. The district court found that MDK never signed the October Document, and nothing in the record indicates otherwise.

MDK alleges that, in November 2016, Proplant told MDK that Proplant would provide the bid and performance bonds for a "potential contract in Bolivia." Proplant allegedly waited until the final days before the due date before asking for more time to provide the bond. On December 13, 2016, Proplant allegedly informed MDK that, because of complexities relating to sending money overseas, it could not submit the bond. Proplant allegedly asked MDK to submit the bond instead. MDK allegedly replied that it would only submit the bond if Proplant signed a contract promising to pay MDK for the bond.

The record indicates that on December 13, 2016, MDK and Proplant executed a "Commitment Agreement." The Commitment Agreement explained that Yacimientos Petroliferos Fiscales Bolivianos ("YPFB"), Bolivia's state-owned energy company, was soliciting bids for an operations and maintenance ("O&M") contract. The Commitment Agreement

---

[1] On the same day that the district court granted Proplant's summary judgment motion, it also granted MDK's motion to dismiss Proplant's counterclaims against MDK. Proplant filed a notice of cross-appeal but stated in its brief that it "waives its cross-appeal in the event this Court issues an opinion affirming the district court's summary judgment in favor of Proplant." Because we affirm the district court's summary judgment in favor of Proplant, we do not consider Proplant's cross-appeal.

provided that MDK would assist Proplant with its efforts to obtain this O&M contract by collecting and filing certain documents for Proplant and by tendering to YPFB a bid bond of $500,000. In return, Proplant promised to furnish MDK with certain documents. Proplant also promised to take several other actions if it were "awarded" the O&M contract. Specifically, Proplant promised (1) "to execute the O&M agreement with YPFB pursuant to the terms set forth in" certain documents; (2) to pay MDK $500,000, plus bank charges, if it "decides not to execute the O&M agreement"; (3) "to subcontract MDK to provide all the services as set forth in" a separate document; and (4) to pay MDK $1 million from its "profits resulting from the execution of the Project."

The parties agree[2] that on December 14, 2016, Proplant bid on the YPFB project for the first time. They further agree that after YPFB declared the project deserted on December 30, Proplant bid on the YPFB project for a second time on January 19, 2017. MDK alleges that it submitted a $500,000 bid bond to YPFB and that Proplant assured MDK that it would "issue the contract bond if the bid is awarded."

The parties agree that a Proplant representative and an MDK representative met with YPFB on March 20, 2017. Mike Antony, an owner of Proplant, submitted a declaration stating that at this meeting, YPFB agreed to incorporate thirty technical and commercial changes into the parties' bid. Antony further declared that YPFB requested that Proplant submit certain documents and a performance bond.

MDK alleges that on March 22, 2017, YPFB awarded Proplant the O&M contract. MDK further alleges that, after being awarded the contract,

---

[2] In response to a court order, the parties submitted a "Joint Agreed Timeline" to the district court.

No. 21-20207

Proplant was required to tender certain documents to YPFB and to deliver a performance bond. Proplant allegedly tendered the documents late and never provided the bond. On April 18, 2017, Proplant allegedly informed MDK that it would not submit the bond.

The record indicates that on April 3, 2017, an MDK representative named Pablo Miya sent a WhatsApp message to a Proplant representative named Murthy Chitturi stating, "I just received a call from these guys saying that weird things are happening inside YPFB and that please we have to hurry up with the documents and sign the contract ASAP." Then on April 4, Miya messaged Chitturi, "ypfb deadline will be thursday 14th. If we dont sign the contract and submit the 2 bonds by that date. Legal area will cancell the bidding process and executing the bid bond."

The parties agree that on April 5, "Techna sent a Letter of Transparency complaining about the bid process." Miya later messaged Chitturi, "Everything happened because Tecna [sic] sent that letter."

Antony declared that on April 6, he travelled with Miya to YPFB's office in Bolivia to personally deliver the requested documents. However, Antony continued, because YPFB's contract manager did not show up to receive the documents, Antony and Miya left the documents with the manager's secretary. Antony further explained that after again trying and failing to deliver the documents to YPFB several days later, Proplant representatives emailed the documents to YPFB. Antony concluded his declaration by stating that YPFB "failed to ever provide Proplant with a contract to execute."

The parties agree that on April 21, 2017, "YPFB declared the project deserted." The parties further agree that they jointly sought legal advice from Bolivian lawyers, who advised them that because YPFB had deserted the project, it was legally obligated to return the bid bond to MDK. The

Bolivian lawyer stated in an email to Proplant, "YPFB is being abusive and its actions are politically driven." The lawyer suggested two legal avenues that the parties could pursue, but he suggested that because "[t]he counter party is the Bolivian State (YPFB)," "any legal action could be seriously undermined by the current political scenario in our country." Proplant forwarded the email to MDK, explaining that the Bolivian lawyer had proposed "two options to counter the politically driven decision by YPFB with no fault of us."

In February 2018, MDK sued Proplant. MDK's complaint raises six causes of action. First, MDK claims that Proplant breached the October Document. Second, MDK claims that Proplant committed common law fraud by promising MDK in November 2016 that it would provide a bid bond even though it did not intend to do so. Third, MDK claims that Proplant breached the Commitment Agreement. Fourth, MDK claims that Proplant made negligent misrepresentations related to the Commitment Agreement. Fifth, MDK claims that Proplant fraudulently induced MDK into signing the Commitment Agreement. Finally, MDK claims that Proplant committed common law fraud with respect to the Commitment Agreement.

On February 20, 2018, the district court issued an "Order for Conference," ordering the parties to exchange initial disclosures and to be "prepared to discuss discovery in a conference so that the court may fashion a brief, effective management plan." The court ordered counsel to "appear for an initial pretrial conference" on May 14, 2018. At that conference, the court ordered the parties to "file a joint chronology with supporting data" by May 30. The court also ordered, "Formal discovery is quashed. The parties will talk." Finally, the court ordered the dismissal of several Proplant representatives from the case. On June 26, the court issued another order. In addition to dismissing another Proplant defendant and repeating the court's prior admonition that "[t]he parties will talk," this order instructed the

parties to submit a document explaining "to the court why the project with [YPFB] ended and what steps should be taken to advance the litigation." Finally, on August 1, the court ordered the parties to "exchange their data about the life of the deal and to "tell the court whether they want to mediate and with whom." The court also signed an order establishing "a procedure for disclosing confidential information, protecting it, and challenging it."

On September 4, 2018, Proplant moved for summary judgment, asking the district court "to dismiss MDK's claims in their entirety." The court granted the motion, dismissing both of MDK's breach of contract claims along with its various tort claims. MDK appealed.

## II.

MDK argues that the district court abused its discretion by ruling on Proplant's summary judgment motion before the parties had completed discovery.

The Federal Rules of Civil Procedure give district courts the power to grant summary judgment motions before the parties have completed discovery. *See* Fed. R. Civ. P. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."); *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) ("Rule 56 does not require that *any* discovery take place before summary judgment can be granted." (citation omitted)). The Rules also protect parties from premature summary judgment motions, providing that if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). However, "non-moving parties requesting Rule 56(d) relief 'may not

simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* (quoting *Raby*, 600 F.3d at 561). We review a district court's denial of a Rule 56(d) request for abuse of discretion. *Mendez*, 823 F.3d at 331.

Here, MDK did not file in the district court a Rule 56(d) affidavit or declaration requesting additional discovery. MDK did briefly argue in its response to Proplant's summary judgment motion that the "motion for summary judgment is premature because discovery is incomplete." However, the response did not "identify specific facts below that would alter the district court's analysis" or in any way "demonstrate . . . how the additional discovery would likely create a genuine [dispute] of material fact." *Mendez*, 823 F.3d at 337 (cleaned up).[3] Rather, it simply asserted that "no depositions have been held, nor have interrogatories, requests for admission, nor requests for documents been exchanged between the parties" and that the "defendant has repeatedly failed to provide evidence of its allegations despite numerous opportunities to do so." Accordingly, assuming arguendo that MDK's response to Proplant's summary judgment motion qualifies as a Rule 56(d) request for additional discovery, the court did not abuse its

---

[3] In 2010, the wording of the summary judgment standard was revised to refer to a genuine "dispute" of material fact, rather than a genuine "issue." *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. Accordingly, where appropriate, this opinion substitutes "dispute" for "issue."

discretion by implicitly denying the request. *Cf. Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285-86 (5th Cir. 1990) ("Assuming, without deciding, that Washington's request for discovery in his supplemental memorandum constituted a request for a Rule 56(f) continuance, we find that the trial judge did not abuse his discretion in denying the request.").[4] And because MDK did not meet the Rule 56(d) standard for deferring summary judgment, the district court did not err by ruling on Proplant's summary judgment motion before the parties had completed discovery.

## III.

MDK suggests in its reply brief that Proplant's summary judgment motion was "legally deficient" under Federal Rule of Civil Procedure 56 because the motion identifies "dispositive facts" rather than "undisputed facts" and relies on "inadmissible hearsay. MDK also contends in its reply brief that the district court's summary judgment order was "legally deficient" because its "assumes undisputed facts" and dismissed MDK's tort claims "sua sponte." However, MDK's opening brief barely mentions these arguments and does not support them with *any* citations either to legal authorities or to the record.

An appellant's brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). "A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it." *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (citation omitted). Moreover, because we do not consider issues raises for the first time in an appellant's reply brief, *see, e.g.*, *Alaniz v. Zamora-Quezada*, 591

---

[4] Rule 56(f) was recodified as Rule 56(d) in 2010. *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

F.3d 761, 777 (5th Cir. 2009), "[a]n appellant abandons all issues not raised and argued in its *initial* brief on appeal," *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

MDK's opening brief failed to adequately present its arguments that Proplant's summary judgment motion and the district court's summary judgment order were "legally deficient." Accordingly, MDK has waived these issues, and we do not consider them.

IV.

Finally, MDK argues that the district court erred by granting summary judgment in favor of Proplant on MDK's breach of contract claims.[5]

"We review de novo a district court's grant of summary judgment." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine [dispute] of material fact." *Id.* (quoting *E.E.O.C. v. LHC Grp., Inc.*,

---

[5] The district court also granted summary judgment in favor of Proplant on MDK's various tort claims. While MDK seeks reversal of these rulings on the above-described procedural grounds, it does not challenge the court's judgment against its tort claims on the merits.

No. 21-20207

773 F.3d 688, 694 (5th Cir. 2014)) (first alteration in original). However, "[o]nce the moving party fulfills this responsibility, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (citation omitted).

The parties agree that Texas law governs MDK's breach of contract claims. Texas requires plaintiffs raising a claim for breach of contract to show that: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

MDK raises two breach of contract claims. Its first breach of contract claim involves the October Document. The district court granted Proplant's motion for summary judgment on this claim on the ground that the October Document "was not signed by both parties and did not create a valid contract."

To prove "the existence of a valid contract," the plaintiff must show, inter alia, that "the parties executed and delivered the contract with the intent that it be mutual and binding." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). MDK alleges in its complaint that as of November 11, 2016, it had not executed the October Document, and nothing in the record indicates that the October Document was subsequently executed. When "the non-movant bears the burden of proof at trial," a party moving for summary judgment "may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

competent summary judgment proof that there is [a dispute] of material fact warranting trial." *Nola Spice Designs*, 783 F.3d at 536 (citation omitted). In its summary judgment motion, Proplant argued that MDK had not executed the October Document. Because MDK has the burden of proof on this issue but has not pointed to any evidence suggesting that it did in fact execute the October Document, the district court did not err by granting summary judgment in favor of Proplant on MDK's first breach of contract claim.

The district court also granted Proplant's motion for summary judgment on MDK's second breach of contract claim, which concerned the Commitment Agreement. The court reasoned that while YPFB "may have selected Proplant's bid as the winning bid, . . . it would not be officially awarded until Proplant and [YPFB] finalized the terms with a signed contract." However, YPFB "deserted the bid—for whatever reason—before it signed a contract with Proplant, so the bid was never awarded." And, the court concluded, because "the bid being awarded was a condition precedent to Proplant's obligations under the [Commitment Agreement], it did not breach the contract by not doing what MDK alleges."

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). "A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998). The Commitment Agreement required Proplant to take several actions, including paying MDK $500,000, "[i]f awarded with the Project," that is, if YPFB awarded Proplant the O&M contract. MDK alleges in its complaint that Proplant was "awarded the project" on March 22, 2017. However, Proplant argued in its summary judgment motion that YPFB had not awarded it the project; in fact, Proplant argued, YPFB had deserted the project.

Once again, when "the non-movant bears the burden of proof at trial," a party moving for summary judgment "may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *Nola Spice Designs*, 783 F.3d at 536 (citation omitted). After Proplant argued that YPFB had not awarded it the project, MDK directed the court to an exhibit containing two untranslated documents written in Spanish. "Normally, the submission of foreign documents unaccompanied by English translations is error, and such documents would not be considered on appeal." *United States v. Valdivia*, 680 F.3d 33, 45 (1st Cir. 2012); *see also Unified Buddhist Church of Vietnam v. Unified Buddhist Church of Vietnam*, 838 F. App'x 809, 813 (5th Cir. 2020) (unpublished). MDK did not direct the court to any other evidence. MDK thus failed to meet its burden of demonstrating by *competent* evidence that there is a dispute of material fact as to whether YPFB awarded Proplant the O&M contract. Accordingly, the district court did not err in granting Proplant's motion for summary judgment on MDK's second breach of contract claim.[6]

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[6] The Commitment Agreement imposed one obligation on Proplant that did not have a condition precedent: "[f]urnishing MDK with all the documents listed in the technical specifications documents of the Bid." MDK argues that Proplant did not deliver certain documents to YPFB. However, MDK did not argue in the district court, and does not argue on appeal, that Proplant failed to deliver any documents *to MDK*. Accordingly, the question of whether Proplant breached this obligation is not before us.