# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2026

Lyle W. Cayce
Clerk

No. 25-30193

———————

In the Matter of Roman Catholic Church of the Archdiocese of New Orleans,

*Debtor*,

*versus*

Richard Trahant; Amy Trahant,

*Appellants*,

*versus*

Mark Alan Mintz; Jones Walker, L.L.P.; Donlin Recano & Company, Incorporated,

*Appellees*.

———————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-1873

———————

Before Haynes, Duncan, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

———————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-30193

The claims at issue here are based on the alleged improper service of an order in which the bankruptcy court concluded that Richard Trahant, Plaintiff below, violated a protective order and removed his clients from the committee of unsecured creditors. Trahant was later sanctioned by the bankruptcy court. Plaintiffs, Trahant and his wife, Amy Trahant, sued debtor's counsel, Mark Mintz; Mintz's law firm, Jones Walker LLP; and the debtor's service agent, Donlin, Recano & Co. Inc., for various state-law torts. Defendants removed, arguing, among other things, that Plaintiffs' action was a core bankruptcy proceeding. The district court referred the action to the same bankruptcy court that sanctioned Trahant. Plaintiffs filed a motion to remand, which was denied because the bankruptcy court concluded that it was in fact a core proceeding. Plaintiffs filed motions to recuse aimed at both the bankruptcy court and the district court—all were denied. Defendants eventually filed a motion for summary judgment alleging entitlement to derivative judicial immunity because they served the order at issue at the bankruptcy court's direction. The bankruptcy court agreed and granted the motion. Plaintiffs appealed the various orders, and the district court affirmed in all respects. Plaintiffs timely appealed that decision. Finding no error, we AFFIRM.

## I.     Background

### A.     Factual Background

The conduct at issue occurred within the Chapter 11 bankruptcy case of the Roman Catholic Church of the Archdiocese of New Orleans ("Debtor"). In the bankruptcy case, Trahant represented a group of creditors, "Certain Abuse Victims." The Debtor was represented by Mintz, who is a partner at Jones Walker LLP. The bankruptcy court appointed Donlin, Recano & Company, Inc. ("DRC" and, collectively with Mintz and Jones Walker, "Defendants") as the Debtor's "claims and noticing agent."

2

No. 25-30193

With respect to notice of developments in the bankruptcy case, the Bankruptcy Court for the Eastern District of Louisiana's Local Rules require debtors to "file a complete mailing matrix containing the correct name and address of all known creditors and other parties in interest," known as a "Mailing Matrix." EDLA Bankr. L.R. 1007-2(A). Presumably because of the Mailing Matrix's size in the bankruptcy case, the bankruptcy court approved a more narrow "Special Notice List," which would be used for matters that did not require notice to the Mailing Matrix. Trahant did not take issue with the composition of the Mailing Matrix upon its creation.

In June of 2022, the United States Trustee informed the bankruptcy court that it believed that there had been a violation of the bankruptcy court's protective order, which the bankruptcy court had entered in August 2020. Upon review, the bankruptcy court found that Trahant had provided confidential information he received through the bankruptcy case to a third party and the media on multiple occasions and in violation of the protective order. The bankruptcy court entered an order finding as much and removing Trahant's clients from the committee of unsecured creditors ("Trahant Order"). The bankruptcy court then ordered the Debtor's counsel to "serve [the Trahant Order] via first-class U.S. Mail on those parties in interest who will not receive service via this Court's CM/ECF system and file a certificate of service within three days." The bankruptcy court later imposed sanctions against Trahant in the amount of $400,000.[1]

---

[1] Trahant also appealed the bankruptcy court's finding of contempt and imposition of sanctions, but our court affirmed the district court's judgment affirming the finding of contempt and imposition of sanctions in another case. *Trahant v. Off. Comm. of Unsecured Creditors (In re Roman Catholic Church of Archdiocese of New Orleans)*, No. 23-30466, 2026 WL 18901, at *11 (5th Cir. Jan. 2, 2026) (unpublished).

Unsure of exactly how to go about serving the Trahant Order, Debtor's counsel contacted the bankruptcy court's chambers via email and asked: "[W]as the Court's intention that the [Trahant] Order be served on all parties in interest who will not receive service via the CM/ECF system, or rather, only on those parties identified in the Special Notice List . . . who will not receive service via the CM/ECF system?" The bankruptcy court's chambers responded: "Please serve the [Trahant] Order on all parties in interest who will not receive service via the CM/ECF system. Do not limit it to the parties identified in the Special Notice List[.]"During a hearing that occurred prior to service, however, the bankruptcy court discussed with Defendants how to go about serving the Trahant Order and instructed that the names of the creditors that Trahant represented be redacted. Defendants then served the Trahant Order on the entire Mailing Matrix.

## B.    Procedural Background

Richard and Amy Trahant ("Plaintiffs") filed a lawsuit in Louisiana state court, alleging, *inter alia*, claims for abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress, all based on the service of the Trahant Order. Plaintiffs named as defendants Mintz, Jones Walker, and DRC. Plaintiffs specifically alleged that Defendants served the Trahant Order on the entire Mailing Matrix. Plaintiffs do not allege that Defendants served the Trahant Order on individuals outside of the Mailing Matrix, only that the Mailing Matrix included individuals who were not "parties in interest" in the bankruptcy proceeding.

Defendants promptly removed the action to federal court. Defendants asserted that the federal district court had subject-matter jurisdiction "pursuant to 28 U.S.C. §§ 1331, 1334, and 1367." Upon Defendants' request, the district court referred the action to the bankruptcy court. The district court stated that referral was appropriate because the "claims

No. 25-30193

constitute either a core proceeding . . . or, at least, a proceeding related to a title 11 case." The referral was "for all purposes." Plaintiffs filed a motion to reconsider, but the district court again concluded that referral was appropriate.

Prior to the order of reference, Plaintiffs had filed a motion to remand, which the bankruptcy court denied. The bankruptcy court reasoned that it had in rem subject-matter jurisdiction because the *Barton*[2] doctrine required that the bankruptcy court first grant Plaintiffs leave to proceed against Defendants, the district court had subject-matter jurisdiction under 28 U.S.C. § 1334(a), and the bankruptcy court, in turn, had jurisdiction to enter a final judgment because the action was a "core" bankruptcy proceeding. 28 U.S.C. § 157(b)(1).

During this time, Plaintiffs also sought the bankruptcy judge's recusal. Plaintiffs filed motions to recuse, under 28 U.S.C. §§ 144[3] and 455, in the bankruptcy court. Plaintiffs asserted that the bankruptcy court had "personal bias or prejudice against them." The bankruptcy court denied the motion asserted under § 144, finding that that section was inapplicable to bankruptcy courts. As for the motion under § 455, the bankruptcy court concluded that, in context, the actions at issue would not lead a reasonable, objective person to doubt the court's impartiality.

Defendants later filed a motion for summary judgment, which the bankruptcy court granted. The bankruptcy court noted that Defendants "are professionals of the Debtor" and concluded that, because Defendants acted

---

[2] *Barton v. Barbour*, 104 U.S. 126 (1881).

[3] Plaintiffs first filed their motion to recuse in the district court under 28 U.S.C. § 144, but the district court denied the motion, concluding that § 144 requires that such a motion must be filed before the bankruptcy judge as "the judge before whom the matter is pending."

No. 25-30193

"'under the supervision and subject to the orders of the bankruptcy judge,' and, therefore, as an arm of the [bankruptcy court] in serving the [Trahant] Order, they are entitled to derivative absolute immunity." Plaintiffs sought leave to conduct additional discovery under Federal Rule of Civil Procedure 56(d), but the bankruptcy court denied this motion, reasoning that the information Plaintiffs identified would not affect the immunity analysis.

Plaintiffs appealed to the district court the orders denying the motions to remand and recuse, as well as the order granting summary judgment. Included in Plaintiffs' notice of appeal were the district court's own orders of reference and denial of Plaintiffs' first recusal motion. Relying in part on this improper act, Plaintiffs filed a motion for disqualification under 28 U.S.C. § 47, directed at the district judge. Plaintiffs argued that the district judge should be recused because a district court cannot review its own orders.

The district court denied the motion for disqualification, emphasizing the fact that it only reviews orders rendered in the bankruptcy court, and affirmed each of the bankruptcy court's appealed orders, largely agreeing with the bankruptcy court's reasoning. Plaintiffs promptly appealed.

## II.     Jurisdiction & Standard of Review

The district court, exercising its own appellate jurisdiction under 28 U.S.C. § 158(a)(1), entered a final decision on Plaintiffs' appeal from the bankruptcy court. Accordingly, we have jurisdiction to consider this appeal under 28 U.S.C. § 158(d)(1) as well as under 28 U.S.C. § 1291. *Bank of N.Y. Mellon v. GC Merch. Mart, LLC (In re Denver Merch. Mart, Inc.)*, 740 F.3d 1052, 1055 (5th Cir. 2014).

We review for abuse of discretion orders denying motions to recuse, *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999), permissive abstention, *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 (5th Cir. 1990), and additional discovery, *Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir.

2022). We review de novo determinations of subject-matter jurisdiction, *Bissonnet Invs. LLC v. Quinlan (In re Bissonnet Invs. LLC)*, 320 F.3d 520, 522 (5th Cir. 2003), as well as grants of summary judgment, *Tex. Cap. Bank N.A. v. Dall. Roadster, Ltd. (In re Dall. Roadster, Ltd.)*, 846 F.3d 112, 123 (5th Cir. 2017).

## III.    Discussion

At issue on appeal are multiple rulings of the bankruptcy and district courts. We discuss each decision in turn. At the outset, we (A) discuss the motion to remand, because subject-matter jurisdiction is central to that analysis. Next, we (B) discuss whether the district court's referral of this action to the bankruptcy court was appropriate and then (C) the denial of Plaintiffs' motions to recuse and for disqualification. Last, we (D) discuss the grant of summary judgment in Defendants' favor and, relatedly, the denial of Plaintiffs' request for additional discovery.

### A.    Motion to Remand

Plaintiffs' arguments with respect to their motion to remand contend that the district court did not have subject-matter jurisdiction in the first place, so we start there.

Plaintiffs contend that remand was appropriate for a few reasons. They say that the district court lacked federal subject-matter jurisdiction and, in the alternative, assert that either mandatory or permissive abstention was appropriate. Defendants echo the district and bankruptcy courts, contending that subject-matter jurisdiction was satisfied because, among other arguments, the claims at issue are "core" matters, and abstention was not required. We agree with Defendants. Plaintiffs' action is properly viewed as a "core proceeding," and abstention, either mandatory or permissive, is not appropriate.

No. 25-30193

### 1.    *Plaintiffs' claims constitute a "core proceeding"*

With respect to jurisdiction in bankruptcy cases, we have explained that 28 U.S.C. § 1334 "lists four types of matters over which the district court has jurisdiction:" "cases under title 11," "proceedings arising under title 11," "proceedings 'arising in' a case under title 11," and" "proceedings 'related to' a case under title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987). Bankruptcy courts derive their subject-matter jurisdiction from 28 U.S.C. §§ 1334 and 157. "Specifically, § 157(b)(1) gives bankruptcy courts full judicial power over 'all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under . . . this section . . . .'" *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002) (quoting 28 U.S.C. § 157(b)(1)).

While bankruptcy courts have more limited power over other proceedings, if a proceeding is "core," "§ 157 authorizes the bankruptcy court to decide the matter and enter a final judgment." *Id.* We have explained "that § 157 equates core proceedings with the categories of 'arising under' and 'arising in' proceedings." *Id.* (quoting *In re Wood*, 825 F.2d at 97). "Arising under" proceedings "involve a cause of action created or determined by a statutory provision of title 11," while "arising in" proceedings "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Wood*, 825 F.2d at 96–97. "[T]herefore, a 'proceeding is core under [§] 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, *could arise only in the context of a bankruptcy case*.'" *In re U.S. Brass Corp.*, 301 F.3d at 304 (emphasis added) (quoting *In re Wood*, 825 F.2d at 97).

Putting these principles into practice, we have held that claims are core when they "are inseparable from the bankruptcy context." *Southmark*

8

No. 25-30193

*Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 931 (5th Cir. 1999). We concluded in *In re Southmark Corp.* that a debtor's malpractice suit against a court-appointed examiner's accountant was a core proceeding because, among other things, the action implicated the bankruptcy court's ability to police "court-appointed professionals" and jurisdiction to adjudicate claims by and against the debtor's estate. *Id.* at 931–32. We have also acknowledged that, where "a proceeding implicates the bankruptcy court's power to interpret and enforce its own orders, it is core in at least the 'arising in' way." *Deelen v. Dickson (In re McDermott Int'l, Inc.)*, No. 23-20436, 2024 WL 3875141, at *2 (5th Cir. Aug. 20, 2024) (per curiam) (unpublished);[4] *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).

Plaintiffs' action is undoubtedly a core proceeding. The claims at issue involve Plaintiffs' (one of whom was a representative of a group of creditors in the bankruptcy) allegation that Defendants (debtor's counsel and court-approved claims-noticing agent) improperly served a bankruptcy court order (the Trahant Order) on the entire Mailing Matrix (a court-approved list of parties interested in the bankruptcy) at the order of the bankruptcy court. Plaintiffs' claims against Defendants arise from their roles as Debtor's counsel and court-approved claims-noticing agent in the underlying bankruptcy. Like *In re Southmark Corp.*, the conduct at issue here cannot be separated from the bankruptcy context because the action implicated the bankruptcy court's ability to police "court-appointed professionals" and

---

[4] Although *In re McDermott International, Inc.* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4).

No. 25-30193

may also implicate the bankruptcy estate, as the appointment order for DRC provides for indemnification in some circumstances. 163 F.3d at 931. Then, similar to *In re McDermott International, Inc.*, this case required the bankruptcy court to interpret its own order, the Trahant Order, to determine who should have been served. 2024 WL 3875141, at *3. Plaintiffs' claims, by their nature, "could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97.[5]

### 2.    *Abstention is inappropriate*

Plaintiffs argue that, even if subject-matter jurisdiction was satisfied, either mandatory or permissive abstention should apply in this case. But neither is appropriate.

Start with mandatory abstention. Abstention is mandated where "the claim has no independent basis for federal jurisdiction, other than § 1334(b)," "the claim is a non-core proceeding," "an action has been commenced in state court," and "the action could be adjudicated timely in state court." *Edge Petrol. Oper. Co., Inc. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007) (citation omitted). Because this action is a core proceeding, mandatory abstention is not appropriate. *Id.* at 300–01.

Next, permissive abstention, which we review for abuse of discretion. *In re Howe*, 913 F.2d at 1143. Though we will "not gainsay the importance of state courts deciding state law issues," "[t]he decision to grant permissive abstention . . . lies within the discretion of the district court and we will not reverse that decision unless the district court clearly abused its discretion."

---

[5] Because we conclude that this is a core proceeding, we need not reach Defendants' assertion that the *Barton* doctrine also provides a basis for subject-matter jurisdiction or that federal-question jurisdiction exists.

No. 25-30193

*Id.* The bankruptcy court noted that its justifications for declining to abstain included the fact that the resolution of Plaintiffs' claims depend upon the bankruptcy court's interpretation of its own orders and the state claims are nonetheless "core" claims such that state law issues do not predominate over the bankruptcy issues. Indeed, there is a close nexus between the bankruptcy proceeding and the issues in this action. As such, it was not an abuse of discretion, and surely not clearly so, to decline to abstain in this context.

\* \* \*

All told, the district court did not err by affirming the bankruptcy court's order denying Plaintiffs' motion to remand. Subject-matter jurisdiction exists in this case. Plaintiffs' claims constitute "core proceedings," and they have failed to demonstrate that it was error for the district court to affirm the bankruptcy court's decision not to abstain.

### B.    Referral to the Bankruptcy Court

Plaintiffs next contend that the district court erred by referring this case to the bankruptcy court without their consent. We disagree.

Referral of Plaintiffs' core claims was appropriate. "District courts have jurisdiction over bankruptcy cases, and they may refer cases at their discretion to bankruptcy courts." *EOP-Colonnade of Dall. LP v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 266 (5th Cir. 2005) (citing 28 U.S.C. §§ 1334 and 157). Bankruptcy courts "may enter all appropriate orders and judgments in core proceedings," but, in non-core proceedings, "a bankruptcy judge must submit proposed findings of fact and conclusions of law . . . to the district court" unless the parties consent otherwise. *Id.* (citing 28 U.S.C. § 157(b)–(c)). Stated plainly, consent is not required for core proceedings. *Id.* Because Plaintiffs' claims are "core," the district court was permitted to refer this action to the bankruptcy court for all purposes without Plaintiffs' consent.

11

Plaintiffs' contention regarding the bankruptcy court's analysis of their core claims is of no moment. Plaintiffs assert that the bankruptcy court did not properly establish that this case constitutes a core proceeding because it did not perform a claim-by-claim analysis. *See Halper v. Halper*, 164 F.3d 830, 839 (3d Cir. 1999) (adopting a claim-by-claim approach). But this argument fails for multiple reasons. For one, Plaintiffs have not pointed to any controlling authority from the Supreme Court or our court demonstrating that a claim-by-claim analysis is required. For another, that analysis was effectively conducted in this case. The district court first reasoned that the bankruptcy court likely conducted a claim-by-claim analysis even if not expressly. The district court next concluded for itself that, in all events, "*each* of [Plaintiffs]' claims (abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium) arise out of the same set of alleged facts concerning [Defendants]' interpretation and enforcement of an order of the bankruptcy court and, thus, [Plaintiffs]' state-court action" is a core proceeding. Then for yet another, Plaintiffs have failed to demonstrate that the analysis would differ for any particular claim of theirs such that one claim would be "non-core" while the other claims are "core."

Likewise, Plaintiffs' reliance on the alleged "personal injury tort" nature of this action does not alter our conclusion. Plaintiffs aver that the referral was improper because the bankruptcy court is not authorized to "try or otherwise dispose of tort claims." In support of this assertion, Plaintiffs point to both 28 U.S.C. § 157(b)(2)(B) and (b)(5). As for § 157(b)(2)(B), this subsection clarifies that core proceedings do not include "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." 28 U.S.C. § 157(b)(2)(B). But Plaintiffs fail to explain how this action constitutes a liquidation or estimation of claims against the estate for purposes of distribution. *Id.* Next, § 157(b)(5) states that the district court

No. 25-30193

"shall order that personal injury tort and wrongful death claims shall be tried in the district court." *Id.* § 157(b)(5). Courts have handled § 157(b)(5)'s demands with respect to personal injury torts in different ways.[6] Nonetheless, we need not reach this issue because the bankruptcy court had jurisdiction (as this was a core proceeding), the district court conducted a de novo review of the bankruptcy court's summary judgment order, and Plaintiffs have not explained how they have been harmed by the bankruptcy court's ruling on the motion for summary judgment in light of these facts.[7]

\* \* \*

In sum, the district court did not err by referring this action to the bankruptcy court for all purposes.

## C.   Motions to Recuse and for Disqualification

Plaintiffs take issue with the bankruptcy court's denial of their motions to recuse under both 28 U.S.C. §§ 455 and 144, as well as the district

---

[6] "Some courts read this provision broadly to mean that the bankruptcy court has no jurisdiction to rule on a motion for summary judgment to the effect that there is no viable claim." 1 BANKRUPTCY LAW MANUAL § 2:14 (5th ed.). But others "emphasiz[e] the words 'shall be tried' and permit[] the bankruptcy court to conduct pretrial proceedings . . . and even . . . make a dispositive ruling on summary judgment." *Id.* Though we need not fully resolve this issue, we note that appeals of summary judgment to the district court are reviewed de novo, which does not present the same sort of issues that an appeal after a jury trial would. In that latter case, the action would need to be tried in the district court in the first instance, but, at any rate, that situation is not in play here.

[7] *Stern v. Marshall*, 564 U.S. 462, 479 (2011) (holding that "§ 157(b)(5) is not jurisdictional"). This is not a case in which the bankruptcy court lacked power to act. *Contra United States v. Ruiz–Rodriguez*, 277 F.3d 1281, 1293 n.17 (11th Cir. 2002) ("[H]armless error analysis does not apply when a magistrate judge lacks the power to act."); *cf. Singh v. Holder,* 591 F.3d 1190, 1199 (9th Cir. 2010) (any error by the IJ was rendered harmless by de novo review of the issue).

No. 25-30193

court's denial of their additional motion to disqualify. As Defendants aver, each of these motions was properly denied. We agree.

The motion filed under § 144 as to the bankruptcy court judge was correctly found inapplicable because it is only for district judges. *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979).

Turning to § 455, "[a]ny . . . judge . . . shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned," 28 U.S.C. § 455(a), and, likewise, she "shall also disqualify [herself] . . . [w]here [she] has a personal bias or prejudice concerning a party," *id.* § 455(b)(1). "The judge abuses [her] discretion in denying recusal where a reasonable man, cognizant of the relevant circumstances surrounding the judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality." *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003) (citation modified). "[T]he standard for bias is not 'subjective,' as it once was, but, rather, 'objective.'" *Id.* (citation omitted). "[R]eview should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." *Id.* at 455 (citation omitted). The litigant "must (1) demonstrate that the alleged comment, action, or circumstance was of 'extrajudicial' origin, (2) place the offending event into the context of the entire trial, and (3) do so by an 'objective' observer's standard." *Id.* Further, the litigant must demonstrate that the judge's "refusal to recuse was not merely erroneous, but, rather, an abuse of discretion." *Id.*

Having reviewed the record in detail, we conclude that none of the statements Plaintiffs rely on warrant recusal. The statements claimed were made in the context of a discussion about a potential breach of the bankruptcy court's protective order, of which Trahant was suspected, or made after the bankruptcy court had sanctioned Trahant for the discovered breach. In that context, Judge Grabill was either discussing how to prevent further leaks,

14

how to share the Trustee's report and prevent leaks, or discussing Trahant after the court had indeed found him to be a bad actor—i.e., that he willfully violated the protective order. Even if we were to assume an extrajudicial source was involved with respect to some of the statements, once placed in context, none of these statements "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Andrade*, 338 F.3d at 455. Moreover, the statement Plaintiffs emphasize the most, that Trahant is a "bad actor," was effectively restating exactly what the bankruptcy court said in the Trahant Order.

We note that the mere collection of declarations from other people asserting that the declarants believe recusal is required cannot support recusal where it is not otherwise required based on a judge's conduct. As Defendants point out, "[e]ach of the declarations is virtually identical and merely recites that it was 'offensive' for the bankruptcy court to find against . . . Trahant." Indeed, contrary to Plaintiffs' assertions, the quantity of declarations a litigant compiles is not determinative on a question of recusal, especially where declarations appear to be form declarations. The declarations collected also do not attempt to place Judge Grabill's conduct in the broader context discussed above. Furthermore, the declaration filed by Amy Trahant, a plaintiff in this action, also does not alter the above recusal analysis. The bankruptcy court did not abuse its discretion in declining to consider Plaintiffs' declarations.[8]

---

[8] Plaintiffs also assert that Judge Grabill's participation in CLEs with Jones Walker attorneys and teaching a class with Mintz also show favoritism. But Plaintiffs cite no support for this conclusion, nor do they provide support in the record for this assertion. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal."). Nonetheless, the bankruptcy court provided a thorough rebuttal of this point.

No. 25-30193

Plaintiffs next argue that the district court erred by refusing to disqualify itself. They assert that the district court was reviewing its own orders on appeal, which is prohibited. 28 U.S.C. § 47 ("No judge shall hear or determine an appeal from the decision of a case or issue tried by him."). But Plaintiffs erroneously included these orders in their notice of appeal. Further, as Defendants point out, the district court's interlocutory orders were never part of the appeal to the district court because 28 U.S.C. § 158 does not provide a mechanism for a party to appeal a district court order back to the district court. Indeed, § 158 "expressly grants district courts jurisdiction to hear appeals from bankruptcy courts' decisions." *River Prod. Co., Inc. v. Webb (In re Topco, Inc.)*, 894 F.2d 727, 734 (5th Cir. 1990) (emphasis omitted). It was improper for Plaintiffs to designate any of the orders as the subject of their appeal to the district court because the district court, of course, has no jurisdiction to review them. The district court clarified that it would "not review its orders referring the case to the bankruptcy court." It also noted that its prior orders were, at any rate, not final and thus not appealable. So, there could be no possible violation of § 47.

\* \* \*

At bottom, we conclude that the district court did not err by affirming the bankruptcy court's decision denying Plaintiffs' motions to recuse and did not err by denying Plaintiffs' motion to disqualify.

## D.   Motion for Summary Judgment

Plaintiffs next challenge the bankruptcy court's grant of summary judgment and denial of their request for discovery. Plaintiffs' central contention is that Defendants acted in bad faith, and *ultra vires*, by serving the Trahant Order on the entire Mailing Matrix. Plaintiffs aver that the bankruptcy court erred by granting Defendants' motion for summary judgment on the basis that Defendants are entitled to derivative absolute

judicial immunity because there is a fact issue as to whether Defendants actually complied with the bankruptcy court's order. Plaintiffs also argue that they should have been permitted to conduct discovery. We disagree on both counts. We first discuss the motion for summary judgment and then the request for discovery.

### 1.    *Summary judgment was appropriate*

"Summary judgment is appropriate if there is no genuine dispute as to any material fact." *In re Dall. Roadster, Ltd.*, 846 F.3d at 123 (citation modified). "When reviewing a grant of summary judgment, we review the facts drawing all inferences most favorable to the party opposing the motion." *Id.* (citation omitted). We discuss below the availability of immunity and then the parties' arguments regarding whether a fact issue remains.

Immunity is available in appropriate circumstances. The nature of the function performed determines whether immunity is appropriate. *See Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996) (citation modified) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). Court-appointed actors, such as trustees, who act "under the supervision and subject to the orders of the bankruptcy judge" act "as an arm of the [c]ourt" and, with court approval, are "entitled to derived [judicial] immunity." *See Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. Unit A Mar. 1981) (per curiam); *Baron v. Sherman (In re Ondova Ltd. Co.)*, 914 F.3d 990, 993 (5th Cir. 2019) (per curiam) ("Trustees are entitled to absolute immunity for all actions taken pursuant to a court order.").

Here, this principle applies to Defendants as Debtor's counsel, since debtors-in-possession share the rights and powers of a trustee in a bankruptcy case, 11 U.S.C. § 1107(a), and DRC was approved by the bankruptcy court as the Debtor's "claims and noticing agent." To be sure, derivative

immunity extends to attorneys. *In re Ondova Ltd. Co.*, 914 F.3d at 994 (citation omitted). Because Plaintiffs assert state-law claims, it is important to note that "Louisiana jurisprudence on judicial immunity mirrors the federal doctrine," and Plaintiffs do not dispute this point. *Sharp v. Palmisano*, No. 13-cv-5429, 2013 WL 5969661, at \*4 (E.D. La. Nov. 8, 2013) (unpublished) (citation omitted). Accordingly, if Defendants acted at the order of the bankruptcy court and in accordance with that order, they are entitled to derivative judicial immunity.

There is no fact issue as to whether Defendants complied with the bankruptcy court's order. The propriety of summary judgment hinges on whether the bankruptcy court instructed Defendants to serve the Trahant Order on the entire Mailing Matrix. If it did, then Defendants are entitled to immunity, and summary judgment was appropriate. This is because Plaintiffs specifically take issue with the Defendants' decision to serve the Trahant Order *on the Mailing Matrix*. Plaintiffs concede that this is what occurred, and they do *not* say that Defendants provided notice to individuals *outside* of the Mailing Matrix. As for whether the bankruptcy court ordered the entire Mailing Matrix served, the record leaves no doubt—that is what was ordered. Defendants followed the bankruptcy court's instructions to the letter. Defendants did not act *ultra vires*.

Indeed, the bankruptcy court, when reviewing its own prior instructions, concluded that it had ordered Defendants to serve the entire Mailing Matrix. The district court acknowledged the bankruptcy court's conclusion and, likewise, determined that "there is ample record evidence showing that the bankruptcy court intended for the [Trahant] Order to be served on the [M]ailing [M]atrix." We ordinarily "review the bankruptcy court's interpretation of its own orders de novo," and defer to the bankruptcy court's interpretation only where ambiguities persist. *AKD Invs., LLC v. Mag. Invs., LLC (In re AKD Invs.)*, 79 F.4th 487, 491 (5th Cir. 2023)

(emphasis omitted). The record is not ambiguous, and we reach the same conclusion as the bankruptcy court.

The record makes clear that the bankruptcy court ordered Defendants to serve the entire Mailing Matrix.

The focal point of the dispute is the June 13, 2022, status conference. At the time of the status conference, the bankruptcy court's prior instructions in the Trahant Order and via email were arguably unclear. Defendants and the bankruptcy court explain that during the hearing, the bankruptcy court ordered that the Trahant Order be served on the Mailing Matrix. Plaintiffs disagree, so a review of that hearing is necessary.

The bankruptcy court ordered Defendants to serve the entire Mailing Matrix during the hearing.[9] The bankruptcy court clarified that it wanted to make sure that the entire committee constituency was served with the Trahant Order. The parties expressed to the bankruptcy court their concern that the identities of four expelled committee members were contained in the Trahant Order. Serving a notice of reappointment instead of the Trahant Order was briefly discussed, and this was the only alternative discussed during the hearing. But Mintz then suggested that these names could be redacted from the Trahant Order. The bankruptcy court later confirmed that

_____

[9] Early during the conference, Mintz, one of the Defendants and Debtor's counsel, addressed the bankruptcy court regarding service because the Trahant Order was unclear. When explaining his understanding (or lack thereof) of what service was required, Mintz mentioned to the bankruptcy court the possibility that the Trahant Order should be served on the whole Mailing Matrix, to which the bankruptcy court responded "Uh-huh (indicating an affirmative response)" in the middle of Mintz's discussion. Defendants contend that the court stating "Uh-huh" after Mintz mentions the Mailing Matrix proves that the bankruptcy court instructed that the order be served on the Mailing Matrix. That is not how we read the record. The bankruptcy court responded with "Uh-huh" multiple times throughout the hearing, and this was not an affirmative directive, but rather a colloquial mechanism to express understanding.

Defendants should take that approach, and that the Trahant Order should be redacted. When the hearing is viewed in its full context, it becomes evident that the bankruptcy court directed that the redacted order should be served on the entire Mailing Matrix. Moreover, a review of the transcript from this hearing in combination with the preceding email exchange, where chambers clarified that the Special Notice List (the only alternative service list other than the Mailing Matrix) should not be used, makes plain that the bankruptcy court intended for Defendants to serve the Trahant Order on the entire Mailing Matrix.[10]

### 2. *Plaintiffs were not entitled to further discovery*

The final issue is whether further discovery was warranted. Plaintiffs contend that the bankruptcy court's grant of summary judgment was premature. That is not the case.

Federal Rule of Civil Procedure 56(d) permits a nonmovant to demonstrate "that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment. But "the non-moving party must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *MDK Sociedad De Responsabilidad*

---

[10] Plaintiffs' assertions about the composition of the Mailing Matrix are irrelevant. Plaintiffs complain repeatedly throughout their briefing that people were served with the Trahant Order that should not have been served. Plaintiffs' averments in this respect take issue not with Defendants' conduct, but with the composition of the Mailing Matrix. However, this is not the appropriate time to litigate the composition of the Mailing Matrix, and, at any rate, the composition of the Mailing Matrix would not alter the immunity analysis above.

*Limitada v. Proplant Inc.*, 25 F.4th 360, 366 (5th Cir. 2022) (citation modified).

The facts Plaintiffs seek would not alter the above analysis. The facts Plaintiffs say they need time to discover are a complete list of recipients of the Trahant Order, the dates when each recipient was served, and information regarding whether and when defendants had notice that the service was overbroad. But these facts would only assist Plaintiffs in litigating the construction of the Mailing Matrix. They would not help Plaintiffs avoid Defendants' assertion of immunity. The bankruptcy court did not err by denying Plaintiffs' request for discovery.

\* \* \*

In the end, the district court did not err by affirming the bankruptcy court's grant of summary judgment and decision to deny Plaintiffs' request for discovery.

## IV. Conclusion

For the reasons explained above, we find no error and AFFIRM.